# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONNA SATTERLEE,                    *

             *Plaintiff*,                    *

      v.                    *

                                  *   No. 1:25-cv-2403-SAG

UNIVERSITY OF MARYLAND,                    *
EASTERN SHORE, ET AL.,
             *Defendants*.                    *

   *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Jennifer A. DeRose

_____
JENNIFER A. DEROSE
Federal Bar No. 28374
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 17th Floor
Baltimore, Maryland  21202
jderose@oag.state.md.us
(410) 576-6318
(410) 576-6437 (facsimile)

October 31, 2025

Attorneys for University of Maryland Eastern Shore, University System of Maryland, Heidi M. Anderson, Rondall Allen, Moses Kairo, Grace Namwamba, Jason Casares, Alexandra Ginta Martin, Matthew A. Taylor, and Jay Perman

# TABLE OF CONTENTS

Page

FACTUAL BACKGROUND ................................................................. 3

ARGUMENT ...................................................................................... 8

I.    STANDARD OF REVIEW ....................................................... 8

II.   DR. SATTERLEE'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE IT IS BARRED BY THE TERMS OF HER TRANSITIONAL TERMINAL LEAVE AGREEMENT WITH THE UNIVERSITY ......................................... 10

      A.    Dr. Satterlee Waived Her Rights to Sue the Defendants on All Grounds Raised in the Complaint Under Her Transitional Terminal Leave Agreement. ................................... 10

      B.    Dr. Satterlee Was Not Constructively Discharged but Opted to Resign with Advice of Her Counsel. ....................... 12

III.  DR. SATTERLEE'S TITLE VII DISCRIMINATION CLAIMS (COUNTS 1 AND 2) SHOULD BE DISMISSED BECAUSE SHE FAILED TO TIMELY FILE THEM AFTER RECEIVING A RIGHT TO SUE LETTER FROM THE EEOC ......................... 15

IV.   DR. SATTERLEE'S DUE PROCESS AND CONSPIRACY CLAIMS AGAINST THE INSTITUTIONAL DEFENDANTS UNDER 42 U.S.C. § 1983 AND § 1985 (COUNTS 3, 4, 5) ARE PRECLUDED BY THE DOCTRINES OF SOVEREIGN IMMUNITY AND QUALIFIED IMMUNITY. ............................... 17

V.    DR. SATTERLEE'S CIVIL CONSPIRACY CLAIMS UNDER 42 U.S.C. § 1985 (COUNTS 4 AND 5) SHOULD BE DISMISSED BECAUSE SHE HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT SUCH CLAIMS AND BECAUSE THEY ARE BARRED BY THE CORPORATE CONSPIRACY DOCTRINE ................... 20

      A.    Dr. Satterlee's Civil Conspiracy Claims Fail as a Matter of Law Because Her Allegations of Conspiracy Do Not Meet Minimum Pleading Standards. ................................... 20

      B.    Dr. Satterlee's Civil Conspiracy Claims Fail as a Matter of Law Under the Corporate Conspiracy Doctrine. ................................... 21

VI.   Dr. Satterlee's Fraud and Other Tort Claims Raised Under Maryland Law (Counts 6, 7, 8) Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction to Hear Them. ........................ 23

 A.   The Institutional Defendants are Immune from State Law Tort Claims in this Court ................................................................................ 23

 B.   The Court Should Not Assert Supplemental Jurisdiction Over Tort Claims Brought by Dr. Satterlee Against the Individual Defendants Because the Complaint Raises No Competent Federal Claims. ................ 24

 C.   The Court Should Dismiss the Tort Claims Brought by Dr. Satterlee Because They Fail to Meet Minimum Pleading Standards. ........................ 25

CONCLUSION ............................................................................................................. 27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DONNA SATTERLEE,                          *

              *Plaintiff*,                  *

        v.                                *

                      *  No. 1:25-cv-2403-SAG

UNIVERSITY OF MARYLAND,                    *
EASTERN SHORE, ET AL.,
              *Defendants*.              *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants the University of Maryland Eastern Shore, the University System of Maryland, (collectively, the "Institutional Defendants), Heidi Anderson, Rondall Allen, Moses Kairo, Grace Namwamba, Jason Casares, Alexandra Ginta Martin, Matthew Taylor, and Jay Perman, (collectively, the "Individual Defendants") by undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by plaintiff, Dr. Donna Satterlee.

**INTRODUCTION**

Plaintiff Dr. Donna Satterlee is a former faculty member of the University of Maryland Eastern Shore (the "University").  She presents a wide-ranging complaint claiming that the defendants – all of them, from the Chancellor of the University System of Maryland to her former department chair – discriminated against her on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – e17 ("Title VII") (Count 1); that the defendants terminated her employment as unlawful

retaliation for her protected activities under Title VII (Count 2); that the defendants violated her right to procedural due process as provided under the United States Constitution (Count 3); that the defendants engaged in a civil conspiracy to violate her civil rights and retaliate against her, in violation of 42 U.S.C. § 1985 (Counts 4 and 5); that defendants fraudulently induced her to resign from her position and enter into a Transitional Terminal Leave Agreement with the University (Count 6); that the defendants caused her harm by negligently hiring, supervising, and training the Individual Defendants (Count 7); and that the Individual Defendants tortiously interfered with her contract of employment with the University (Count 8).

Dr. Satterlee's *pro se* complaint levels broad critiques against USM and the University's administration and staff but she fails to state a single claim for which relief may be granted by this Court. First and foremost, Dr. Satterlee's complaint should be dismissed in its entirety with prejudice because at the time of her voluntary resignation, she entered into an agreement, negotiated by her attorney, that waived her right to bring any action arising out of her University employment against any of these defendants. Dr. Satterlee contends that this agreement was fraudulently induced (Count 6), but this claim is unavailing: as a matter of law, presenting an employee with an opportunity to resign as an alternative to a proposed termination is neither fraudulent nor deceptive, and Dr. Satterlee, by her own admission, opted to enter into the agreement and resign rather than pursue the University's and USM's processes for contesting a termination. Dr. Satterlee's civil rights claims (Counts 1 and 2) are also improperly before this Court because she did not bring those claims within the ninety-day window after the Equal Employment

Opportunity Commission ("EEOC") declined to pursue her complaint.  Furthermore, the Institutional Defendants are immune from suit with respect to both her civil rights claims under § 1983 and her state-law tort claims (Counts 1, 2, 3, 7 and 8).  Her claims of civil conspiracy (Counts 4 and 5) fail both because she has failed to properly state a claim for an underlying wrongful act, and because they are precluded by the intracorporate conspiracy doctrine.  Finally, in the absence of a properly-raised federal cause of action, her tort claims (Counts 7 and 8) should be dismissed because this Court lacks jurisdiction to hear them and because they do not meet the minimum pleading standard.  In short, this action is entirely without merit and should be dismissed.

## FACTUAL BACKGROUND[1]

Dr. Satterlee was a faculty member at the University from 2002 to 2024. (ECF No. 7, Am. Compl., ¶¶ 17, 85.)  In 2019, she was awarded tenure in the Department of Human Ecology in the University's School of Agricultural and Natural Sciences.  (ECF No. 7, Am. Compl. ¶¶ 17, 19.)  The University is a constituent institution of the University System of Maryland ("USM"), itself an instrumentality of the State of Maryland.  See Md. Code Ann., Educ. §§ 12-101(b)(6)(iii), 12-102(a).  The University is a teaching, research, and doctoral university and is Maryland's historically Black 1890 land grant institution.

Dr. Satterlee alleges that her troubles at the University began in or around 2014, after the appointment of defendant Dr. Grace Namwamba as chair of Dr. Satterlee's

---

[1]    For purposes of this motion only, the defendants will recite the facts alleged in the complaint as if they were true.  Defendants dispute many of the alleged facts and reserve the right to do so in future pleadings.

department.  (*See* ECF No. 7, Am. Compl., ¶ 38.)  Dr. Satterlee alleges that Dr. Namwamba "began to target Dr. Satterlee for hostile and discriminatory treatment," in keeping with Dr. Namwamba's alleged "discriminatory preference for Black faculty by giving them higher pay and less work than non-Black faculty."  (ECF No. 7, Am. Compl., ¶¶ 38 – 39.)  No individual comparators are named, but Dr. Satterlee alleges that she was the lowest-paid faculty member in her department.  (ECF No. 7, Am. Compl., ¶ 43.)  Dr. Satterlee also alleges that defendant Dr. Heidi Anderson, President of the University since approximately 2018, has "expressed a preference for African-Americans in hiring of faculty and staff" and that Dr. Anderson, along with upper level administrators at the University "exhibits a marked bias against Caucasian and Asian citizens."  (ECF No. 7, Am. Compl., ¶¶ 24, 26.)

Dr. Satterlee identifies herself as a leader of a "campus effort to achieve non-discriminatory pay and promotion opportunities for all employees at [the University]."  (ECF No. 7, Am. Compl., ¶ 28.)  Dr. Satterlee contends that Dr. Namwamba imposed "last minute work dumps" on Dr. Satterlee that were "extremely cunning and calculated to cause maximum damage," and additionally provided Dr. Satterlee with unsanitary and unsafe working conditions.  (ECF No. 7, Am. Compl., ¶¶ 41 – 42.)  At various times, Dr. Satterlee complained about Dr. Namwamba to defendants Dr. Anderson, Dr. Moses Kairo (the dean), Dr. Rondall Allen (the provost), Matthew Taylor (General Counsel), and others, to no avail.  (ECF No. 7, Am. Compl., ¶¶ 52, 54 – 58, 62.)

In early 2024, Dr. Namwamba submitted a workplace bullying complaint against Dr. Satterlee with the University's Office of Institutional Equity and Compliance ("OIE") alleging that Dr. Satterlee had engaged in a pattern of bullying her, in violation of the

University's workplace bullying policy.  (ECF No. 7, Am. Compl., ¶ 79.)  Under the

University's Workplace Bullying Policy and Procedures, workplace bullying is defined as

> Intentional, persistent, malicious, unwelcome, severe or pervasive conduct that harms, intimidates, offends, degrades or humiliates an employee, whether verbal (including written or electronic) or physical, at the place of work or in the course of employment. Workplace Bullying is behavior that a reasonable person would find to be hostile, offensive, and not related to an employer's legitimate business interests.

Policy and Procedures Prohibiting Workplace Bullying, attached hereto as **Exhibit 1**, at 1.[2]

The policy lists, non-exclusively, several actions that constitute workplace bullying, such

as personal attacks or public humiliation of a coworker.  *Id.*  It also lists several actions that

do not constitute workplace bullying, such as a single incident of unreasonable behavior,

or having differences of opinion on work-related concerns.  *Id.*  The policy does not limit

the definition of workplace bullying to instances where a supervisor bullies a person who

reports to them.  *See id.*

---

[2] The Court may take judicial notice of the policy, which is a matter of public record that is available on the University's website. https://wwwcp.umes.edu/oie/wp-content/uploads/sites/27/2021/06/UMES-Workplace-Bullying-Policy-and-Procedures-FINAL-Revised.pdf  (last visited October 29, 2025).  *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).  Alternatively, the Court may consider the policy without converting the instant motion to one for summary judgment, as the policy is incorporated by reference in, and integral to, the complaint.  *Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  The policy is referenced in the amended complaint, ECF No. 7, Am. Compl. ¶¶ 82, 83, and there is no dispute as to its authenticity, as it is publicly available. Moreover, the policy is fundamental to the claims in this case many of the claims directly relate to the allegations of workplace bullying under the policy and the ensuing investigation.  *See Goines*, 822 F.3d at 166 (holding that a document will be considered integral to the complaint where claims turn on or are based on the document).  Accordingly, the Court may consider the policy on the instant motion without converting it to one for summary judgment.

The University's workplace bullying policy provides that upon receiving a complaint of workplace bullying, OIE must investigate the complaint. *Id.* at 3. This investigation includes interviewing the complainant, any witnesses, and the respondent. *Id*. The findings of an investigation must be shared with the employee. *Id.* These findings include any sanction recommended by OIE, including, in "egregious" circumstances, a recommendation to terminate the respondent's employment. *Id.* A party to an investigation may appeal the OIE finding to present new evidence, to allege a flaw or denial of due process, or to allege evident bias in the investigation. *Id*. at 6-7. Where a tenured or tenure-track faculty member is ultimately terminated for cause, that person may appeal their termination to the USM Board of Regents. *See generally* University System of Maryland Policy II-1.04 – Policy on Procedures for Appeals to [USM] Board of Regents of Decisions to Terminate Tenured or Tenure-Track Faculty Members, attached hereto as **Exhibit 2**.[3]

In accordance with University policy, OIE conducted an investigation of Dr. Namwamba's complaint and heard Dr. Satterlee's rebuttal but concluded that she had engaged in bullying so egregious as to merit a recommendation of termination. (ECF No. 7., Am. Compl. ¶¶ 79 - 84.) Before the University could act upon OIE's recommendation and terminate her employment, Dr. Satterlee's attorney wrote to the University's General

---

[3] The Court may take judicial notice of the policy, which is a matter of public record that is available on the USM website. (https://www.usmd.edu/regents/bylaws/SectionII/II104.pdf, last visited October 29, 2025). *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

Counsel, defendant Matthew Taylor, threatening suit and proposing a settlement under which his client would cease her appeal of the recommendation and "enter into a terminal leave agreement." Letter, Robin Cockey, Esq. to Matthew Taylor, Esq. (July 17, 2024) attached to this Motion as **Exhibit 3**. [4] Dr. Satterlee executed a Transitional Terminal Leave Agreement ("TTLA") with the University on September 26, 2024, a copy of which is attached to this Motion as **Exhibit 4**. The TTLA provides, *inter alia*, that Dr. Satterlee would resign her position as of December 14, 2024 (TTLA at II. A.); that she would receive a payment equivalent to 9 ½ months of her annual salary (TTLA at I. A.); and that the University would make a lump-sum contribution to her retirement plan in the amount of $41,223.00 (TTLA at III., Attachment B). In return, Dr. Satterlee released USM, the University, and all their "respective agents, servants, and employees," of any and all claims arising from her employment (TTLA at IV. B.). Dr. Satterlee acknowledged that she had been advised to consult with legal counsel and was given the opportunity to do so, and that she entered the agreement "knowingly and voluntarily." (TTLA at V. G.)

On or about March 25, 2025, Dr. Satterlee filed a charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") under the Age Discrimination in Employment Act of 1967 ("ADEA") and under

---

[4] The Court may consider the documents at Exhibits 3 and 4 in connection with the motion to dismiss because they are undisputed and their contents are referenced in and integral to the amended complaint. *See See Goines*, 822 F.3d at 166 (holding that a document will be considered integral to the complaint where claims turn on or are based on the document). In her amended complaint, Dr. Satterlee states that she entered into the TTLA and describes the circumstances under which she came to enter into it. Am. Compl. ¶ 85.

Title VII, alleging discrimination by her employer on the basis of age and race, and also claimed retaliation for protected activity.  (ECF No. 7, Am. Compl. ¶ 91, *see also* Notice of Charge of Discrimination, EEOC (April 3, 2025), attached to this motion as **Exhibit 5**)[5]. Approximately one month later, on April 23, 2025, without having sought or received a position statement from the University, the EEOC issued a determination not to pursue further investigation of Dr. Satterlee's charge, providing her with a ninety-day period in which to file a lawsuit against the respondents with respect to her charges of discrimination on the basis of age and race  under ADEA and Title VII.  Determination of Charge (April 23, 2025), EEOC, attached to this Motion as **Exhibit 6**.  She filed the present action on August 15, 2025, raising, *inter alia*, claims of age and race discrimination under Title VII. (*See* ECF No. 7, Am. Compl. ¶¶ 93 – 112 (Counts 1 and 2).

## ARGUMENT

### I.    STANDARD OF REVIEW

A motion seeking dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "challenges a court's authority to hear the matter brought by a complaint."  *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 370 (D. Md. 2020).  "[S]overeign immunity deprives federal courts of

---

[5] The Court may consider the documents at Exhibits 5 and 6 in connection with the motion to dismiss because they are undisputed and their contents are referenced in and integral to the amended complaint.  *See Goines*, 822 F.3d at 166 (holding that a document will be considered integral to the complaint where claims turn on or are based on the document).  In her amended complaint, Dr. Satterlee states that she filed a charge of discrimination with the EEOC and that she was issued a right-to-sue letter.  Am. Compl. ¶¶ 90 – 91,

jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation and internal quotation marks omitted). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). A facial jurisdictional challenge asserts that the allegations are insufficient to establish subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009). In considering such a challenge, a court applies the same standard as it does under Rule 12(b)(6). *Id.*

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* and *Twombly* decisions "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the well-pled facts are accepted as true, the Court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citations and internal quotations omitted).

A plaintiff proceeding *pro se* is held to a "less stringent standard than is a lawyer, and the court must construe his claims liberally, no matter how inartfully pleaded."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, even a *pro se* plaintiff must articulate more than mere "labels and conclusions" or "a formulaic recitation of the elements of [a] cause of action." *Walden v. Allstate Ins. Co.*, 388 F. App'x 223, 224 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. 555).

## II.    DR. SATTERLEE'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE IT IS BARRED BY THE TERMS OF HER TRANSITIONAL TERMINAL LEAVE AGREEMENT WITH THE UNIVERSITY.

### A.    Dr. Satterlee Waived Her Rights to Sue the Defendants on All Grounds Raised in the Complaint Under Her Transitional Terminal Leave Agreement.

In her Transitional Terminal Leave Agreement (the "TTLA"), Dr. Satterlee resigned her position and unambiguously waived her right to raise <u>any</u> claims against the defendants arising out of her University employment. *See* Exh. 4, Transitional Terminal Leave Agreement, September 26, 2024 at II.A., IV. B. For this reason alone, the complaint should be dismissed with prejudice against all defendants. Specifically, Dr. Satterlee unconditionally discharged

> the UNIVERSITY [of Maryland Eastern Shore], the State of Maryland, the Board of Regents of the University System of Maryland, the University System of Maryland and the respective agents, servants and employees of each of the above entities (the "Releasees") in both their personal and official capacities. . .

*Id.* at IV. B. This expansive group includes every defendant in the present action. The release names the two Institutional Defendants: the University and USM. It also provides a release for all "agents, servants, and employees" of these entities. Every Individual Defendant in this case is an employee of the University or the USM. *See* Am. Compl. ¶¶ 3 (Heidi Anderson, University President); 4 (Rondall Allen, University Provost); 5 (Moses

Kairo, University Dean); 6 (Grace Namwamba University Department Chair); 7 (Jason Caseres, University Director of Office of Institutional Equity); 8 (Alexandra Ginta Martin, University Associate Director of Office of Institutional Equity); 9 (Matthew Taylor, University General Counsel); 10 (Jay Perman, USM Chancellor).  In exchange for good and valuable consideration, including but not limited to a cash payment equivalent to 9 ½ months of her salary and a $41,223.00 contribution to her retirement account, Dr. Satterlee voluntarily resigned her position and released all these entities and individuals from:

> any and all claims, charges, actions, suits, damages and expenses, including attorneys' fees, from the beginning of time until the Effective Date of this Agreement (as defined below in Section IV.D.), which relate or pertain to EMPLOYEE's UNIVERSITY employment, including, but not limited to, any claims arising from alleged violations of laws (federal, state, and local), Executive Orders, and regulations, including the Bylaws, Policies and Procedures of the Board of Regents of the University System of Maryland and the UNIVERSITY, and any and all claims arising under the Age Discrimination in Employment Act of 1967, as amended. This release is intended by EMPLOYEE and the Releasees to be a complete release extinguishing all claims of any kind against the Releasees regarding any matter, incident or thing relating to EMPLOYEE's UNIVERSITY employment, to the fullest extent allowable by law.

Exh. 4, TTLA at IV. B.  Every claim raised by Dr. Satterlee in the present action arises out of her University employment: her civil rights claims, her due process claims, the civil conspiracy claims, and her tort claims all rest upon factual allegations occurring in the context of her employment.   All her alleged damages concern the conditions of her employment and termination.   These are precisely the claims that she released under the terms of her TTLA, an agreement that was proposed and negotiated by her attorney on her behalf.  *See* Exh. 3, Letter, R. Cockey to M. Taylor (July 17, 2024); Exh. 4, TTLA at IV. B.  Dr. Satterlee cannot now contravene the very agreement she voluntarily signed and seek

to recover for claims, and against defendants, whom she released.  For this reason alone, Dr. Satterlee's entire complaint should be dismissed with prejudice.

### B.    Dr. Satterlee Was Not Constructively Discharged but Opted to Resign with Advice of Her Counsel.

Dr. Satterlee encourages the Court to set aside her clear contractual waiver of her right to sue the defendants by raising a claim that the defendants deceptively and fraudulently induced her to enter into the TTLA.  *See* Compl. at ¶¶ 85, 134 – 141.  As a general rule, "an employee who resigns cannot complain that [her] termination was improper." *Staggs v. Blue Cross of Maryland, Inc.,* 61 Md. App. 381, 386-87 (1985); *see also  Beye v. Bureau of Nat. Affs.*, 59 Md. App. 642, 649, (1984) (noting that "normally, an employee who resigns is not regarded as having been discharged . . .").  The narrow exception to this rule, applicable in cases involving constructive discharge, does not apply here because Dr. Satterlee did not resign in response to a misrepresentation or duress by the University.[6]  *See id*.  While Dr. Satterlee attempts to characterize her resignation as a response to a threat of termination to support her theory that her resignation was wrongfully coerced,  *See* Am. Compl. at ¶ 85, this conclusion is belied by her voluntary withdrawal from pursuing the administrative rights of appeal provided by the University and USM. She instead engaged counsel who proposed and negotiated a TTLA with the University, in

---

[6] As is set forth more fully in Section VI. C. below, Dr. Satterlee's claim of constructive discharge fails for the additional reason that her resignation was motivated by the conclusion of the OIE's investigation, recommending her termination.  This was no misrepresentation, as the OIE did, indeed, conclude that her bullying of her department chair was so egregious as to warrant termination.        q

resolution of her alleged claims. Under these facts, her claim of constructive discharge or coercion fails.

A constructive discharge occurs if an employee's resignation was wrongfully coerced or fraudulently induced. For example, in *Staggs v. Blue Cross of Maryland, Inc*., two employees brought a breach of contract action based on representations by the employer that "the decision had been made to terminate their employment" and that, "if they resigned they would be able to collect unemployment compensation benefits, but if they were discharged those benefits would be unavailable." *Staggs*, 61 Md. App. at 387. The two employees "claimed that they resigned only in response to that inducement, which inducement, in fact, turned out to be false." *Id*. In *Staggs*, the Court held that the employees had sufficient standing to claim they were in fact discharged by their former employer because the employer did not deny the allegation that the inducement made was false. *Id*. at 387-88.

The case of *Stone v. University of Maryland Medical System Corporation*, 855 F.2d 167, 169 (4th Cir. 1988), is instructive here. That case involved an employee who, like Dr. Satterlee, opted to resign when faced with potential termination. *Id*. According to the employment contract at issue in *Stone*, the plaintiff could be terminated only for cause after written notice and an opportunity for a hearing. *Id*. An investigation into claims of medical malpractice against the plaintiff concluded that the plaintiff's conduct was "legally and morally indefensible" and that the plaintiff made misrepresentations to investigators to hide his conduct. *Id*. at 170. After receiving the investigators' report, the Dean of the medical school called the plaintiff "to his office, advised him of the nature of the" allegations

against him and "suggested that it would be best for both [plaintiff] and the University if he resigned immediately." *Id*. Rather than face termination, the plaintiff resigned. *Id*. He later sued pursuant to 42 U.S.C. §1983, arguing his employer violated his due process rights by forcing him to resign. *Id*.

In determining whether the plaintiff in *Stone* was deprived of a constitutionally protected property interest, the Fourth Circuit analyzed whether the plaintiff's resignation was the product of constructive discharge and had been "obtained by the employer's misrepresentation or deception" or "forced by the employer's duress or coercion." *Id*. at 174. Under either the "misrepresentation/deception" or "duress/coercion" theory, the court was evaluating whether the employer's conduct "prevented the employee from making a free and informed choice." *Id*. For a resignation to be involuntary under the misrepresentation/deception theory applied in *Stone*, the resignation must be "induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation." *Id*. at 174. The court held that "[a] misrepresentation is material if it concerns either the consequences of the resignation," for example, the effect on accumulated sick leave, or "the alternative to resignation." *Id*. (internal citations omitted).

For a resignation to be deemed involuntary under the duress/coercion theory, the "totality of the circumstances" must demonstrate that the "employer's conduct in requesting resignation effectively deprived the employee of free choice in the matter." *Id*. (emphasis added). The court held that the mere fact that a plaintiff "was forced to choose between the inherently unpleasant alternatives of resignation and possible termination for

cause does not itself mean that his resignation was submitted under duress. . . ." *Id*. at 177. Applying these tests, the court in Stone determined that the plaintiff had not been constructively discharged because his resignation had neither been fraudulently induced nor obtained under duress or coercion. *Id*. at 175.

Here, the Court should reach the same conclusion. Dr. Satterlee was the subject of an OIE investigation that concluded she had bullied Dr. Namwamba and recommended, due to the egregiousness of Dr. Satterlee's conduct, her termination for cause. Far from being misled by OIE's notice, Dr. Satterlee correctly understood that she was at serious risk of being terminated. Dr. Satterlee had the opportunity to pursue her contention that the OIE investigation was biased and procedurally flawed, both through appeals processes at the University and USM, and, if those were not availing, in the courts. She opted not to pursue that avenue. Instead, she engaged counsel, through whom she proposed and negotiated the terms of the TTLA. *See* Exh. 1, Letter, R. Cockey to M. Taylor ("Dr. Satterlee has appealed, and I am prepared to exhaust all available internal remedies and if necessary to file suit. I write, however, to propose settlement."). Like the plaintiff in *Stone*, she cannot now seek to bring the very claims she compromised in exchange for good and valuable consideration. Accordingly, the Court should enforce the terms of the TTLA and dismiss the entire complaint with prejudice against all defendants.

## III.  DR. SATTERLEE'S TITLE VII DISCRIMINATION CLAIMS (COUNTS 1 AND 2) SHOULD BE DISMISSED BECAUSE SHE FAILED TO TIMELY FILE THEM AFTER RECEIVING A RIGHT TO SUE LETTER FROM THE EEOC.

When a complainant presents a charge of employment discrimination to the EEOC and the EEOC declines to pursue that charge, the agency issues a letter informing the

complainant that they have ninety days after receiving the letter in which to bring a claim against the allegedly offending employer. 42 U.S.C. § 200e-5(f)(1); 29 C.F.R. § 1601.28(e)(1). This deadline is treated as a statute of limitations. *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, (D. Md. 2017). In the Fourth Circuit, the period starts to run when the right-to-sue letter is delivered to the plaintiff's home, not when the plaintiff actually receives it. *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987). If there is no evidence regarding when the plaintiff received the right-to-sue letter, receipt is presumed to have occurred three days after mailing, pursuant to Federal Rule of Civil Procedure 6(d).

Here, Dr. Satterlee has not alleged the date on which she received the right-to-sue letter, but she errantly identified its date of issue as three months later than the time it was actually issued: July 23, 2025 rather than April 23, 2025. *Compare* Am. Compl. ¶ 92 *with* Exh. 3. If the right-to-sue letter is presumed to have been delivered on April 26, 2025, three days after its issuance, the limitations period for Dr. Satterlee's Title VII claims concluded on July 25, 2025. Even if she were to contend that the notice was delayed in the mail, she has offered no factual allegations showing that it was delayed by several weeks. Plainly, Dr. Satterlee's complaint, filed on August 15, 2025, is untimely with respect to her Title VII claims. Accordingly, those claims should be dismissed against all parties.

IV.    **DR. SATTERLEE'S DUE PROCESS AND CONSPIRACY CLAIMS AGAINST THE INSTITUTIONAL DEFENDANTS UNDER 42 U.S.C. § 1983 AND § 1985 (COUNTS 3, 4, 5) ARE PRECLUDED BY THE DOCTRINES OF SOVEREIGN IMMUNITY AND QUALIFIED IMMUNITY.**

Dr. Satterlee's due process and conspiracy claims are barred by Eleventh Amendment immunity and should therefore be dismissed. USM is an instrumentality of the State, and the University is one of its constituent institutions. §§ 12-101(b)(6)(iii), 12-102(a); *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 257-58 (4th Cir. 2005). In Counts 3 - 5 of her complaint, Dr. Satterlee asserts due process and conspiracy claims against the Institutional Defendants under 42 U.S.C. § 1983 and § 1985. However, these claims must be dismissed against the Institutional Defendants because they are immune from such suits by the Eleventh Amendment. The Eleventh Amendment "embodies the principle of sovereign immunity and prohibits suit by private parties against states in federal courts." *Weller v. Dep't of Soc. Serv's for City of Balt.*, 901 F.2d 387, 397 (4th Cir. 1990). State sovereign immunity also bars federal courts from hearing such claims brought against an instrumentality or agency of the state, such as the University or USM. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or *one of its agencies or departments* is named as the defendant is proscribed by the Eleventh Amendment." (emphasis added)).

The Fourth Circuit has described three exceptions to a State's Eleventh Amendment immunity.

> First, Congress may abrogate the States' Eleventh Amendment immunity
> when it both unequivocally intends to do so and acts pursuant to a valid

> grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).... Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004).... Third, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (internal quotations omitted). None of these exceptions is applicable in this case.

First, Congress has not abrogated the States' Eleventh Amendment immunity in connection with 42 U.S.C. § 1983 or § 1985. *See Pennhurst*, 465 U.S. 89 at 120 ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding "neither a State nor its officials acting in their official capacities are "persons" under § 1983"). "While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, it has long been settled that 42 U.S.C. § 1983, which is the ultimate basis for [plaintiff's] claim here, does not effect such an abrogation." *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993) (internal citations omitted); *Rucker v. Higher Educ. Aid Bd.*, 669 F.2d 1179, 1184 (7th Cir.1982) (no abrogation for § 1985 claims).

Second, the *ex parte* Young exception to Eleventh Amendment sovereign immunity is also inapplicable to the present § 1983 and § 1985 claims brought by Dr. Satterlee against the Institutional Defendants. *See Ex parte Young*, 209 U.S. 123 (1908). The Supreme Court has held that this "exception is narrow: it applies only to prospective relief, does not

permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted).  Here, Dr. Satterlee brings these claims against State agencies and against State officers seeking redress for alleged past wrongful acts, rather than ongoing ones.

Finally, while State legislatures are free to enact statutory waivers of Eleventh Amendment immunity (*see Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999)), the test for determining whether a State has waived its immunity from federal-court jurisdiction is a "stringent" one.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  A court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* at 254 (internal quotation marks and alteration omitted); *see also Pevia v. Hogan*, 443 F. Supp.3d 612, 630-32 (D. Md. 2020) (*quoting Atascadero*). Here, Dr. Satterlee has not alleged the Institutional Defendants waived their Eleventh Amendment sovereign immunity to this type of suit, and no such waiver may be found.

As such, because the Institutional Defendants have not consented to being sued in federal court, and because no exception to the State's Eleventh Amendment sovereign immunity applies, the Court lacks subject matter jurisdiction over Dr. Satterlee's § 1983 and § 1985 claims against the Institutional Defendants.

Further, the Individual Defendants are immune from liability for Dr. Satterlee's due process claim (Count 3) under the doctrine of qualified immunity. Analysis of a claim of qualified immunity encompasses two related inquiries: (1) whether the alleged facts establish a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In this instance, the Court need not reach the second arm of the analysis, because the facts alleged by Dr. Satterlee do not establish a violation of her rights to due process. Here, Dr. Satterlee claims that her alleged termination was conducted without affording her due process. Am. Compl. ¶ 114. As described above in Section II. above, Dr. Satterlee abandoned the processes afforded her under University and USM policy, in favor of entry into the TTLA. Therefore, she cannot now allege deprivation of the due process rights that she declined to exercise, and this claim should be dismissed with respect to the Individual Defendants for this reason.

## V. DR. SATTERLEE'S CIVIL CONSPIRACY CLAIMS UNDER 42 U.S.C. § 1985 (COUNTS 4 AND 5) SHOULD BE DISMISSED BECAUSE SHE HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT SUCH CLAIMS AND BECAUSE THEY ARE BARRED BY THE CORPORATE CONSPIRACY DOCTRINE.

### A. Dr. Satterlee's Civil Conspiracy Claims Fail as a Matter of Law Because Her Allegations of Conspiracy Do Not Meet Minimum Pleading Standards.

Despite being held to a less stringent pleading standard than an attorney, a *pro se* plaintiff must still articulate more than mere "labels and conclusions" or "a formulaic recitation of the elements of [a] cause of action." *Walden v. Allstate Ins. Co*., 388 F. App'x 223, 224 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. 555). To maintain a claim of

conspiracy, a plaintiff must show "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).

Dr. Satterlee's complaint lacks <u>any</u> factual allegations concerning agreement between the defendants to violate her rights, presenting only bald assertions that the defendants conspired against her. She alleges that only that the Individual Defendants, except for Chancellor Perman, "knew that [Dr. Namwamba's workplace bullying] complaint [to OIE] was concocted and engaged in the conspiracy and took actions in furtherance [of it]. . . ." Am. Compl. ¶ 121; *see also, e.g.* ¶ 123 ("Defendants Casares and Martin [took actions] in furtherance of the conspiracy"); ¶ 124 ("Defendant Namwamba [took actions] in furtherance of the conspiracy to terminate Plaintiff's employment"). But there is not a single factual averment in the amended complaint that could, viewed in the light most favorable to Dr. Satterlee, support an inference that the Individual Defendants had reached a 'meeting of the minds' in a plot to deprive Dr. Satterlee of her civil rights. Nor are there any facts showing what steps were taken in purported furtherance of the conspiracy. Accordingly, these claims should be dismissed.

**B.    Dr. Satterlee's Civil Conspiracy Claims Fail as a Matter of Law Under the Corporate Conspiracy Doctrine.**

Furthermore, Dr. Satterlee's civil conspiracy claims under § 1985 are barred under the intracorporate conspiracy doctrine. Under this doctrine, agents from a single legal entity are "legally incapable of conspiring, which requires multiple people acting together." *Williams v. Mayor, Baltimore City*, No. WMN-14-1125, 2014 WL 5707563,

*6-7 (D. Md. Nov. 4, 2014) (quoting *Lewin v. Cooke,* 28 Fed. Appx. 186, 195 (4th Cir. 2002)).  The doctrine is based on two principles: a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.  *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985).

Dr. Satterlee cannot sue the University and USM and their agents alleging that they conspired with one another, inasmuch as they are the same.  Md. Code Ann., Educ. § 12-101(b)(6)(iii) (the University is a constituent institution of USM).  Indeed, the Fourth Circuit has routinely affirmed the dismissal of a conspiracy claim against defendants who were alleged to be employees of the same entity.  *See, e.g. Painter's Mill Grille v. Brown,* 716 F. 3d 342 (4th Cir. 2013) (affirming dismissal of conspiracy claims brought against landlord and landlord's agents because "a corporation cannot conspire with its agents because the agents' acts are the corporation's own."); *Lifmann v. Carlson Cos., Inc*., 867 F. 2d 609, 1989 WL 5440, at **3-4 (4th Cir. 1989) (affirming dismissal of civil conspiracy claim on grounds that employees of a parent corporation and employees of a wholly owned subsidiary are legally incapable as a matter of law of forming a conspiracy); *Zombro v. Baltimore City Police Dept*., 868 F. 2d 1364, 1371 (4th Cir. 1989) (observing that the Baltimore City Police Department, even if it were a person, "may not conspire with itself.").  Because the University and USM cannot conspire together with their own employees to violate Dr. Satterlee's rights, counts four and five must be dismissed.

VI.     **DR. SATTERLEE'S FRAUD AND OTHER TORT CLAIMS RAISED UNDER MARYLAND LAW (COUNTS 6, 7, 8) SHOULD BE DISMISSED BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR THEM.**

    A.     **The Institutional Defendants are Immune from State Law Tort Claims in this Court**

As described in Section IV above, state sovereign immunity bars federal courts from hearing claims brought against an instrumentality or agency of the state, such as the University and USM, with limited exceptions. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-02. In the present instance, none of the exceptions set forth in Section IV. applies. Dr. Satterlee's claims of fraud (Count 6), negligence (Count 7) and tortious interference with contract (Count 8) are all state common-law torts, rather than federal statutory claims, so the question of Congressional intent to abrogate immunity is not applicable. As noted above, an *ex parte* Young exception is unavailing in an action against a state or any of its instrumentalities. Finally, a state may consent to suit in federal court, but the Maryland Tort Claims Act ("MTCA") explicitly waives sovereign immunity "as to a tort action, <u>in a court of the State</u> . . . ." Md. Code, State Gov't §12-104 (a)(1) (emphasis added). The MTCA further provides that the act does not "waive any right or defense of the State or its units . . . in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution." Md. Code, State Gov't § 12-103(2). Accordingly, USM and the University, as an instrumentality of the State, have clearly not consented to suit in federal court on these state law torts. Thus, these three counts should be dismissed as against the Institutional Defendants. *See Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 546-47 (2002) (state university immune

from federal suit under state law claim because it did not unambiguously consent to suit on that claim).

**B.    The Court Should Not Assert Supplemental Jurisdiction Over Tort Claims Brought by Dr. Satterlee Against the Individual Defendants Because the Complaint Raises No Competent Federal Claims.**

The Court should decline supplemental subject matter jurisdiction over Dr. Satterlee's tort claims in the absence of any federal cause of action. A district court "may decline" to exercise supplemental jurisdiction over a case when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to retain jurisdiction over state-law claims, district courts must consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 2004).

Although Dr. Satterlee has waived every claim in the amended complaint under the terms of her TTLA, as demonstrated herein, Dr. Satterlee has also failed to raise a competent federal claim: her Title VII claims are untimely filed, her conspiracy claims are insufficiently pled and barred by the intracorporate conspiracy doctrine, and all these claims are barred by sovereign immunity as to the Institutional Defendants. Civil proceedings on Dr. Satterlee's tort claims in the state courts of Maryland would be no less convenient or fair to the parties than would be proceedings in this Court: Dr. Satterlee and all the Individual Defendants live or work in Maryland. Indeed, as Dr. Satterlee and most of the Individual Defendants reside on Maryland's Eastern Shore, the State courts of that

region would be considerably more convenient to the parties. It would respect the comity between the State and Federal courts by permitting these state tort claims to be addressed in a State forum that regularly and appropriately hears such common law disputes between citizens of the State. Finally, dismissal of these claims against the Individual Defendants would promote judicial economy in the United States District Court by reducing administrative and judicial burdens in this venue. Accordingly, Dr. Satterlee's tort claims asserted against the Individual Defendants should be dismissed. *See Shuman v. Sherman*, 356 F. Supp. 911, 914 (D. Md. 1973) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)) (holding "that where all federal claims are dismissed before trial, the federal court should not exercise pendent jurisdiction over the remaining state law contentions.").

### C. The Court Should Dismiss the Tort Claims Brought by Dr. Satterlee Because They Fail to Meet Minimum Pleading Standards.

As described above in Section V. A., a *pro se* plaintiff must articulate more than mere "labels and conclusions" or "a formulaic recitation of the elements of [a] cause of action." *Walden v. Allstate Ins. Co*., 388 F. App'x 223, 224 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. 555). Dr. Satterlee's tort claims do not reach this standard. In Count 6, Dr. Satterlee claims that the defendants fraudulently induced her to enter into the TTLA. Am. Compl. ¶ 135. In Maryland, the first element of a fraud claim is that the defendant made a false representation to the plaintiff. *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 195 (1994). Here, Dr. Satterlee is very clear that the representation that encouraged her to resign and enter into a terminal leave agreement was that OIE had recommended her termination after conducting its investigation. Am. Compl. ¶ 85. This

representation was accurate, no matter how unfair or biased she may have found the OIE's process and conclusions. Accordingly, she has not pled a viable claim for fraud under Maryland law.

Claim 7 of the amended complaint concerns negligent hiring, supervision, and training of the Individual Defendants. "Under Maryland law, an employer's liability in this regard is not to be reckoned simply by the happening of the injurious event. Rather, there must be a showing that the employer failed to use reasonable care in making inquiries about the potential employee, or in supervising or training the employee." *Economides v. Gay*, 155 F. Supp. 2d 485, 489 (D. Md. 2001). *See, e.g. Younger v. Maryland*, No. RDB-16-3269, 2017 WL 3608184, at *6 (D. Md. August 22, 2017) (claim against employer for negligent hiring, training, and supervision dismissed for lack of specific allegations as to supervision, training or causation); *Umheni v. Target Corp.*, No. RWT 15-cv-3827, 2017 WL 1176058, at *2 (D. Md. March 30, 2017) (summary judgment granted where plaintiff alleged no facts beyond conclusory allegations of negligent hiring, training, and supervision). Dr. Satterlee's bare assertions and legal conclusions claiming negligent training and supervision fail to meet her burden to sufficiently plead her claim, alleging only that they "were negligent" and "failed to supervise" their employees and "ought to have foreseen" the wrongful acts Dr. Satterlee alleges occurred. *See* Am. Compl. ¶¶ 143 – 145. Accordingly, Dr. Satterlee's claim against the University for negligent training and supervision must be dismissed because it fails to state a claim upon which relief may be granted.

Lastly, Count 8 of the amended complaint raises a claim for tortious interference with contract. This claim is also inadequately pled. In Maryland law, this tort "is committed when <u>a third party's</u> intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *See Macklin v. Robert Logan Assocs.*, 334 Md. 287, 297 (1994) (emphasis added). Here, the alleged contract in question is the employment relationship between Dr. Satterlee and the University, and all the defendants are the University itself, its employees, the governmental unit of which it is a constituent part, and the chief executive of that governmental unit. *See* Am. Compl. ¶¶ 2 – 11. All the Individual Defendants' actions complained of by Dr. Satterlee were ones they undertook in the course of their employment. Accordingly, there is no third party identified by the amended complaint. Thus Dr. Satterlee has failed to properly plead a claim for tortious interference with contract.

## CONCLUSION

The motion to dismiss should be granted.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Jennifer A. DeRose
_____

JENNIFER A. DEROSE
Federal Bar No. 28374
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 17th Floor

Baltimore, Maryland  21202
jderose@oag.state.md.us
(410) 576-6318
(410) 576-6437 (facsimile)

October 31, 2025                    Attorneys for Defendants the University
                                   of Maryland Eastern Shore, University
                                   System of Maryland, Heidi M.
                                   Anderson, Rondall Allen, Moses Kairo,
                                   Grace Namwamba, Jason Casares,
                                   Alexandra Ginta Martin, Matthew A.
                                   Taylor, and Jay Perman